Dennis W. Delaney

pro-se
337 East Tujunga Apt. K
Burbank, Ca. 91502

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DENNIS W. DELANEY, | ) | Case No.: No. |
|        Plaintiff, | ) | |
|    vs. | ) | |
| JOHN PENNEL, WILLIAM PENNELL AND | ) | |
| DONALD JETT et al, | ) | 42 USC 1983 |
|       Defendant | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**I. Parties**

**II. Litigation History**

In 2020 plaintiff filed a complaint in the southern district of new york based on facts related to an earlier claim filed in Illinois.

Plaintiff filed cause of action, 06-LM-1504, at the circuit court of Sangamon County in Springfield Illinois. The court granted Defendant's Motion To Strike and Dismiss, with prejudice, with respect to two of the five defendants on 2/14/2007 and is noted in the docket entry at page 48 of the record on appeal (No. 4-07-0211). The trial court docket entry specifies that the "The Fourth District Appellate Court" was capable of hearing an appeal on this matter

and this is consistent with Illinois Supreme Court Rule 304 (a). Defendant-Appellees failed to

submit a reply brief and Plaintiff has not received further contact regarding case No. 4-07-0211

from The Fourth District Appellate Court as of November 2nd 2007. Because the tort actions did

not provide relief at the state level, plaintiff asserts his right to file this cause of action under 42

USC 1983.

This complaint is a refiling of an earlier case filed in Illinois but takes into consideration that

underlying facts of the original complaint have continued between 2008 and 2024. The

legal theories regarding cause of action remain the same. Note

also that plaintiff has filed multiple criminal complaints, ao-91.

This is a refiling of a complaint made in 2020 sdny and the

underlying basis of the claim remains the same from 2008-2024.

Plaintiff has resided in NY and in 2020 at the time plaintiffs

complaint,  120 - 01625 was filed. At this time, Plaintiff resides in

Ca.

At the time 120 - 01625, the complaint sought to add the

Republican National Committe as a party. It, then replaces the

Sangamon County Republican Party as the "enterprise" for the

purposes of the civil rico claim.

**III. Nature of the Case**

This case is about misuse of authority within Sangamon County Illinois. At trial, Plaintiff's amended complaint of 11/28/2006 alleged violations of the Racketeer Influenced and Corrupt Organizations Act, Due Process Violations Under 42 USC 1983,  and alleged, in the alternative, several tort claims.

**IV. Statement of the Claim**

**1.  Breach** - Defendants intentionally took part in a concerted action known to cause plaintiff intense physical pain.

> This activity was directed toward plaintiff for a period of time in excess of seven years and followed plaintiff from Illinois to California to Florida to Washington to Texas and most recently within Sangamon County Illinois. The specific acts of battery have been completed by the use of several different substances. The mechanism of delivery relies upon a device that changes the form of the substance from a liquid form or pressurized form to an aerosolized form; such that the compound is dispersed in an airborne fashion. The substances are colorless and odorless, directed toward plaintiff while in public and in private, on an essentially constant basis, and were chosen, designed and used because they were known to be painful to plaintiff. The nature of the substance is also such that it conceals the identity of the perpetrator and prevents typical prosecution.

**2. Proximate Cause**

For more than seven years on a daily, hourly and minute by minute basis, I have been followed, provoked and surveilled by private entities and under the authority of local state and federal

government. Participants often signal the imminent exposure to a painful substance with the use of a particular mannerism or cue. This has the effect of drawing attention to the exposure and reinforcing the inability of the plaintiff to prevent such contact. Because such cues often appear to be derisive or confrontational, one might conclude that they are intended to instill helplessness within plaintiff.

**(1.) "But for" causation** -Were it not for the actions of the conspiracy, plaintiff would be able to conduct professional and social affairs with a degree of normalcy. This would include, for example, an absence of intense pain and an ability to rely upon a fixed residence. After numerous consultations with physicians, plaintiff has been told that the pain he has been subjected to is not the result of any particular medical condition.

**(2.) "Legal" causation** - This has been going on for a long time. It's not a coincidence. The defendants and other participants have made a point to link their actions to plaintiff's injury. For whatever reason, plaintiff can expect an indication of imminent injury and the relationship between the two has been borne out innumerable times.

**3. Damages -** My life has been destroyed

I live in my car. I am thirty-seven years old. I'm not lazy, I'm not an addict, I don't suffer from any mental illness and standardized testing suggests that I am of average intelligence. Before I began living in my car in December of 2003 the constant harassment and exposure to chemicals I had endured in the years prior became unbearable and forced me to leave law school for a second time. Over the years, I've been forced to conclude that a large network of individuals have decided to wield their enormous resources in an effort to destroy my life. I don't say this lightly. It's also worth pointing out that they have been almost completely successful. Anywhere I can go, they can go; anytime, all the time, there is nowhere that is safe and no one that I can trust to help me. I must go weeks or months between opportunities for bathing and live in constant pain or apprehension of such pain. If this legal action isn't successful, then nothing seems to be prevent this harassment from continuing for the rest of my life.

**4.  Calculation of Compensatory Damages**

**(1.)** Because I don't know what I've been exposed to, I can't speculate on the long term health effect of such contact.

**(2.)** I haven't been able to conduct discovery, so I can't begin to assess culpability.

**(3.)** I'm seeking punitive damages and will rely on the judgment of the jury in accordance with the case law factors that typically control in cases such as mine.

**(4.)** I expect a criminal investigation and prosecution and that evidence obtained in preparation for the civil trial will be used in the criminal trial. Cooperation with the civil investigation would be a factor that would reduce the amount demanded in the civil trial with regard to any particular defendant.

## V. Specific Charges

### (1.). Aggravated Battery

**1.** Defendants participated in intentional harmful exposure to plaintiff, or recruited participants to commit aggravated battery, on a continuous basis, using a variety of colorless, odorless and airborne substances having different physical effects including, but not limited to: intense headache, stool softener combined with gas pressure increase, dizziness, burning sensation in my eyes, sharp nervous pain, strong stimulant effect, sharp back pain, strong sedative effect, dry mouth, and strong urination stimulant, nausea, vomiting.

**2.** Defendants and/or recruits intentionally exposed plaintiff to stimulant effect over such a period of time as to deprive plaintiff of sleep for up to 48-96 hours

**3.** Possible food poisoning

**4.** The urination effect and/or stimulant and noise disturbances are directed towards plaintiff roughly 2-5 times every night and intentionally make sleeping difficult

### (2.) Aggravated Assault

As a result of the battery, plaintiff must behave in such a way as to minimize the possibility of exposure and live in constant awareness and fear of such exposure.

### (3.) Defamation

1.  The conspiracy has carried out and is carrying out an elaborate psychological plan designed to intentionally eliminate plaintiffs sense of security, reduce plaintiffs self esteem and self confidence.

2.  This plan has taken place over a period of time longer than ten years and has followed me within Illinois to California to Florida to Washington and to Texas and Wisconsin.

3.  The plan was designed to portray plaintiff as psychologically unstable and it would put into practice methods of achieving that end, ie.; sleep deprivation with constant exposure to a variety of harmful and pain inducing substances over a variety of different settings and over a long period of time.

4. The conspiracy enlisted support by suggesting/insinuating the following: drug addiction, alcohol addiction, homicidal tendencies, homicidal threats, arson, homosexuality, illegitimate children, suicidal tendencies, vandalism, theft, treason/ subversion, depression, mental illness, pedophilia, rape, sex offenses.

5. I have been erroneously classified as a local and national security "threat". This "TALON", "Threat and Local Observation Notice", designation was influenced by political considerations and is the result of an elaborate scheme to implicate me in illegal activity.

This scheme was undertaken under the authority of local, state and federal government through the time, effort and resources of it's employees.

6.  Off duty police officers and firefighters were recruited with promises of reward in promotion and other benefits in return for participation in the conspiracy to commit aggravated battery to plaintiff.

7.  Private security and investigation firms were contracted and otherwise induced to participate in the conspiracy to commit aggravated battery to plaintiff.

8.  At least one local pest control business was contracted or otherwise induced to participate in the conspiracy to commit aggravated battery to plaintiff.

**(4.) Conspiracy to Commit charges 1-4**

Defendants and others named and not named worked together to accomplish the following illegal activities: (1.) aggravated assault (2.) aggravated battery (3.) defamation (4.) intentional infliction of emotional distress

**(5.) 42 USC 1983 - Equal Protection- Deprivation of Rights**

**State Action** - I have been erroneously classified as a national and/or local security "threat"; including "TALON", "Threat and Local Observation Notice" designation as a result of an elaborate scheme to implicate me in illegal activity and this has resulted in the deprivation of plaintiff's rights under US law.

**Color of Law**- This scheme was undertaken under the authority of local and state police and the U.S. Department of Defense and required the time, effort and resources of their employees.

**Contractors -**  In addition, private pest control entities, security guard, detective and

investigative

entities and individuals have been contracted to harass me and some individuals have

been and are currently being actively recruited and/or induced to participate in the

conspiracy in order to promote their status within the enterprise.

**Knowledge -** Local law enforcement officials in the Springfield Police Department, Sangamon County Sheriffs Office and Illinois State Police as well as federal employees are aware of the harassment that I have been subjected to and have actively participated and knowingly allowed such harassment.

**Interstate Commerce Requirement -** Plaintiff stated that the conspiracy followed him from Illinois to Florida to California to Washington to Texas and within Sangamon County Illinois. This required communication and coordination and should meet the de minimus standard.

**1. Cause of Action under 42 USC 1983, Due Process**

Plaintiff alleges several causes of action under 42 USC 1983; (A) a Procedural Due Process

claim, (B) a Substantive Due Process simpliciter claim, (C) a Monell Due Process Claim and (D) several incorporated Due Process claims.

The Procedural Due Process claims derives from the deprivation of safety and the ability to reside in a fixed location without enduring intensified harassment and exposure to painful chemicals, (see breach, p. 2, 3). This should be considered a legitimate interest and I have been deprived of it without due process of law. The specific allegations are related to frequency, duration and locations of exposure as discussed earlier, see especially (aggravated battery, p. 5).

**(B) Substantive Due Process**

The Substantive Due Process claim derives from the factual allegations of intentional exposure to pain-inducing chemicals. The relevant standard for liability is that the action must "shock the conscience" (Schaefer v. Goch 153 F3d. 793, 797 (7th Cir. 1998). Additionally, these actions do not require specific intent, but only that an officer or one that functions under color of state law, knew or should have known that he was violating plaintiff's constitutional rights, (Giarusso v. Chicago 539 F.Supp. 690, 693 (ND Ill. 1982). Over an approximate period of eight years, from Illinois to California to Florida to Washington to Texas and later in Illinois again, plaintiff suffered years of exposure, and see (V, 3. defamation p. 6) regarding ten years of an elaborate scheme to implicate me in illegal activity, (note that alleged complaint was offered 11/28/2006 and harassment is ongoing). This exposure was intended to, and has had, intensely physical impact including the effects listed under "specific offenses – aggravated battery". As a result, the actions of those operating under "color of law" should be considered shocking to the conscience.

The determination of whether an individual is acting under "color of state law" is clarified with respect to the defendants:

Regarding the Pennell family defendants;

(1.) William Pennell "maintains financial relationship with current, former, off-duty and prospective police officers and law enforcement officials".

(2.) Charlie Pennel is employed by Springfield Police Department and formerly worked in the Major Case Unit, or MCU.

(3.) Kevin Pennell is employed by the Springfield Police Department.

(4.) Another Pennell family member is employed by the Jacksonville Fire Department.

(5.) William Pennell obtained employment of Leroy Jet at Springfield Police Department.

(6.) Shannon Pennell was employed by Illinois Reserve Officer Association until recently and is now employed by the U.S. Reserve Officer Association and recruited for the conspiracy in Springfield "in her official capacity".

(7.) John Pennell works with and for William Pennell.

(8.) John has recruited three individuals with financial interest in the city of Springfield's "Southtown Community Development Block Grant" or "CDBG".

(9.) William Pennell is a former law enforcement officer.

(10.) Julie Pennell-Heminghous is currently employed with the Office of the Illinois State Fire Marshall.

Regarding Jett family and other activities under color of state law;

(11.) Donald Jett obtained employment for Leroy Jett at Springfield Police Department, which allowed Leroy Jett's participation in the conspiracy to function under color of state law.

(12.) Donald Jet also works at Landmark Aviation which is owned by the Carlyle Group, and is located at Abraham Lincoln Capitol Airport; here, Shannon Pennell recruited participants, that were reservists and Jett recruited participants.

(13.) Additionally, William Pennell has contacts with private security contractor, USIS, which was owned, until May of 2007, by the Carlyle Group.

(14.) Independently, contracted entities paid by local state or federal funds are operating under "color of state law" and retain access to information above that which is typically available to civilians by virtue of this access.

(15.) Specifically, "Federal employees", (as alleged under color of law section) includes employees at the Federal Bureau of Investigation, the Central Intelligence Agency and the National Security Agency.

(16.) Off-duty firefighters should be considered acting under color of state law.

(17.) The elaborate scheme to implicate me in illegal activity includes those employees at the Office of The Illinois State Fire Marshall, and they should be considered to be working under "color of state law".

**(C) Due Process Claim - Monell**

The local law enforcement community has shown itself incapable of "self policing". Under (Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690-691, (1978), an actor or body working under color of state law may be liable for due process violation by virtue of a custom or practice that results in unconstitutional deprivations of fundamental

rights. In addition, contractors are also liable for such customs or practices, (Howell v. Evans, 922 F2d. 712, 723, 24 (11ᵗʰ Cir. 1991). Springfield Police Department, the Sangamon County Sheriff's Department and the Illinois State Police as well as Federal Agencies, FBI, CIA, and NSA function under a culture and custom that precludes effective internal discipline. To the extent that abuses of the type suffered by plaintiff are possible and perhaps prevalent, these bodies fail to adhere to their constitutional charge. Law enforcement bodies and municipalities are liable for these failures to adhere to good discipline and an all too frequent willingness to "turn a blind eye" when it is perceived to be politically advantageous, see (Robinson v. City of Harvey, 2001 WL 138901, at 7 (N.D.Ill. Feb. 16, 2001) see also (Garcia v. City of Chicago, 2003 WL 1845397, at 3-5 (N.D.Ill. April 8, 2003) and (Kindle v. City of Harvey, 2002 WL 230779, at 4-5 (N.D.Ill. Feb. 15, 2002). Because the actions suffered by plaintiff were the result of a culture and practice that allows selective enforcement based upon partisanship and political incentives, specific actions taken by final policy makers within the law enforcement community functioned to deprive plaintiff of fundamental constitutional rights and should be reviewable as such.

**(d) Incorporated Due Process Claims under 14ᵗʰ Amendement**

As a result of the elaborate scheme to implicate plaintiff in illegal activity, plaintiff has not received equal protection of the law. Because Plaintiff is not an attorney, is represented pro se, and has prepared this document while remaining subject to constant harassment, the treatment of the incorporated claims are especially concise. The 14ᵗʰ Amendment is the repository of the "liberty interest" and as such an appeal to this protection should be successful given the facts of this case. Plaintiff has been denied his First Amendment interest in freedom of speech and association due to National Security Letter gag orders being served on friends and colleagues. In

addition, Plaintiff has also been denied his First Amendment interest in his ability to petition the

government for redress of grievances. Plaintiff has been denied his interest in privacy and

security as described in the Fourth Amendment's search and seizure provision. Plaintiff has also

been denied his interest in privacy and liberty as a result of violations of the protections afforded

U.S. citizens under the Foreign Intelligence Surveillance Act or FISA.

### (6.) 18 USC 1964 Civil Rico

1.      Predicate acts are extortion and intimidation; referenced above: (1.) aggravated assault

(2.) aggravated battery (3.) defamation (4.) intentional infliction of emotional distress

2.   Status within the conspiracy confers benefits such as money and/or
employment/promotion for participants, family and/or friends.

3.   Those that fail to act in furtherance or complicity risk loss of employment and social
isolation; this is clearly intimidation and is carried out by a complex financial and
political network.

4.   Pattern is employment inducement and intimidation for potential participants.

5.   Enterprise is Sangamon County Republican Party

**Individual Defendants**

(1.) John Pennell

1.   John Pennell actively participated in battery to plaintiff.

2. John Pennell recruited participants in conspiracy to commit battery, including but not limited to; Douglas Delong, George Sinclair and Jerry Nelson.

3. John Pennell works with William Pennell and has a business interest in "Private Investigations Incorporated", "P.I.I.".

4. John Pennell has received payment for participation in conspiracy to commit battery to plaintiff.

5. John Pennell sells cocaine and other controlled substances.

6. John Pennell purchases large amounts of cocaine and other controlled substances.

7. John Pennell distributes controlled substances through social network including current and former students of Sacred Heart/Griffin, SHG.

8. John Pennell submits names of known drug users and dealers to William and Shannon Pennell for potential extortion and further investigation by the local law enforcement community.

9. John Pennell plays a role in the targeting of individuals for investigation, referral and prosecution dependant and does this primarily upon partisan political factors.

10. John offers this information with the knowledge that it was gained unlawfully and will be used for illegal purposes.

11. In return, John is immune from prosecution.

12. John also receives considerable financial gain regarding these transactions.

13. John maintains some degree of discretion regarding these referrals which confers power and prestige.


(2.) William Pennell

1.  William Pennell manages and owns "P.I.I.".

2. William Pennell maintains financial relationships with current, former, off-duty and prospective police officers and law enforcement officials.

3. William Pennell supported Springfield Police Department hiring of Leroy Jett in return for Jett family and Donald Jett's participation in conspiracy to commit battery to plaintiff.

4. William Pennell is active in partisan politics and is a current Republican precinct committeeman.

5. William Pennell is aware that John actively recruited for conspiracy to commit battery upon plaintiff.

6. William Pennell aware that participation in the conspiracy to commit battery to plaintiff has conferred benefits to business, " P.I.I.".

7. William Pennell improperly influenced the issuance of national security letters, NSL's, by the local field office of the FBI in Springfield, by using family relationships to circumvent the legal process and did so for financial gain and partisan advantage.

8. This improper influence was exercised by William Pennell in order to circumvent the controlling statutory scheme, with the knowledge that such action was unlawful, and was motivated by the prospect of financial gain and increased status the law enforcement community within Sangamon County and Republican Party of Sangamon County.

8. The following individuals and groups are within William Pennell's social and political network; William Cellini, Robert Kjellander, Irv Smith and labor groups; Terry Fairclough at United Brotherhood of Carpenters #16, UBC, Bradley Schaive at Laborer's International Union of North America #477, LIUNA, Tony Barr at International Brotherhood of Teamsters #916, IBT, Michael Hade at Illinois Federation of Teachers, IFT and as Springfield Area President AFL-CIO Central Labor Council, Illinois State Employees Association #2002, ISEA and the Service Employees International Union of Illinois, SEIU, Illinois Federation of Public Employees #4408, IFPE

9. As a "Counter Intelligence Field Activity", CIFA, contractor, William Pennell is and was aware that crimestoppers "tips" were undocumented and without merit; and in fact he "manufactured" threat for financial gain and political advantage.

10. William Pennell is a "USIS" contractor, a company owned, until very recently, by the Carlyle group; local Carlyle Group businesses include or included recently; Landmark Aviation, Insight Cable and Crowne Plaza Hotel.

11. USIS is a large government contractor with contracts the U.S. Department of Defense, DOD, with significant contracts reliant upon political discretion.

(3.) Shannon Pennell

1. Shannon Pennell recruited in furtherance of the conspiracy

2. Shannon Pennell, in her official capacity at the Illinois Reserve Officers Association, recruited participants employed in the National Guard unit at Capital Airport, where Donald Jett is employed as an aviation machinist.

3. Shannon Pennell selectively facilitated the flow of benefits, including financial grants, to conspiracy participants.

4. Shannon Pennell received atypical promotion and professional advancement as a result of participation in the conspiracy to commit battery to plaintiff and was in fact promoted to a position with the Reserve Officers Association in Washington D.C. within days of her name appearing in interrogatories offered by plaintiff.

5. Shannon Pennell was aware of, and facilitated the improper authorization of NSL's to aquaintances, friends and colleagues of plaintiff

6. Shannon Pennell misused her influence and authority regarding the issuance of NSL's in coordination with individuals employed by the Illinois National Guard and the Air Force Office of Special Investigation, AFOSI.

(4.) Donald Jett

1.  Donald Jett actively recruited participants in conspiracy to commit battery upon plaintiff.

2. Donald Jett obtained employment in a teaching position for his wife, Patricia, at Ursuline Academy, a school owned and operated by the Catholic Diocese of Springfield, in return for participation in the conspiracy to commit battery to plaintiff

3. Donald Jett also obtained Springfield Police Department employment for Leroy Jett in return for participation in conspiracy to commit battery upon plaintiff

(5) Catholic Diocese of Springfield, Illinois

1. The Catholic Diocese of Springfield, Diocese, owns and operates a private school named, Sacred Heart/Griffin, SHG, a hospital located in Springfield, named Saint John's Hospital, hospital, and until recently it owned and exerts influence over Springfield College in Illinois, SCI, also known as a satellite campus of "Benedictine University"

2. The Bunn family exerts influence within the organization, "Catholic Charities".

3. Management and staff at the Hospital, SCI and SHG are aware of the conspiracy to commit battery to plaintiff.

(6) Kent gray

1.    Kent Gray, in his capacity as the chairman of the board at Lincoln Land Community College, LLCC, actively and with intent, directed Workforce Investment Act, WIA, funding toward students that have demonstrated or have committed to a partisan affiliation with the Republican Party.

2.    More than one of these students were recruited to commit battery to plaintiff.

3.    Kent Gray also recruited employees of LLCC to participate in the conspiracy to commit battery to plaintiff, including Dan Jett, a maintenance worker at LLCC.

4.    Kent Gray rewarded partisans with employment secured by the influence of the Sangamon county Republican Party

5.    Kent Gray has had a significant impact regarding the hiring of individuals in the areas of fire protection, law enforcement, nursing and trucking.

6.    Regarding trucking, Kent gray has recruited applicants to the LLCC trucking school to participate in the conspiracy to commit battery to plaintiff.

7.    Applicants recruited by Kent Gray receive a financial grant for approximately $3, 000.00, the cost of the trucking course, in return for participation in actions like those suffered by plaintiff, demonstrating unwavering commitment to the Republican party.

8.    Truck drivers certified by the school often become employed by the firm "Curry Ice and Coal" also known as "Lippold and Arnett"

9.    Truck drivers certified by the school often become members of the IBT.

10.  Graduates of the Fire Science program are eligible to be paid firefighters and LLCC is the only place within a region of approximately 15 counties in central Illinois that students may obtain such a degree.

11.  LLCC also certifies training for auto and aviation mechanics, this would include the type required by employers such as Landmark, where Donald Jett is employed as well as various auto dealerships and these students become eligible to join the IAM.

(7.) George alarm

1. Contracted or otherwise induced to participate in the conspiracy to commit battery upon plaintiff.

2. This decision was taken with the recognition such action was in violation of law.

3. Actions taken by this firm served to conceal the nature and extent of their involvement in the conspiracy to commit battery to plaintiff.

(8) Young's security

1. Contracted or otherwise induced to participate in the conspiracy to commit battery upon plaintiff.

2. This decision was taken with the recognition such action was in violation of law.

3. Actions taken by this firm served to conceal the nature and extent of their involvement in the conspiracy to commit battery to plaintiff.

(9) Vono Medical Supply

1. Contracted or otherwise induced to participate in the conspiracy to commit battery upon plaintiff.

2. This decision was taken with the recognition such action was in violation of law.

3. Actions taken by this firm served to conceal the nature and extent of their involvement in the conspiracy to commit battery to plaintiff.

(10.) Thomas Jurkanin

1. Thomas Jurkanin, in his capacity as Executive Director of the Illinois Law Enforcement Training and Standards Board, ILETSB, has supported financial relationships between various law enforcement entities within Illinois and Blackwater USA.

2. Thomas Jurkanin is secretary of the Illinois Fraternal Order of Police, ILFOP.

3. Thomas Jurkanin has a personal relationship with Patrick Dempsey, formerly of the Police Training Institute at the University of Illinois, PTI, and currently of Blackwater USA.

4. Patrick Dempsey has personal and professional ties to the US Air Force Office of Special Investigations, AFOSI and the Department of Defense, Counter Intelligence Field Activity, CIFA.

5. Blackwater retains former military and cia employess and contractors

6. Thomas Jurkanin has misused his authority by allowing partisans to profit from

threat assessments based on knowingly false "tips" regarding plaintiff.

1. Thomas Jurkanin, at ILFOP, promotes those unwilling to expose partisan and corrupt influences and has worked to promote a culture of secrecy and intimidation at the ILFOP.

2. Thomas Jurkanin, at ILETSB, is in position to defend "errant" officers and promote values antithetical to "honest services" and is aided in this effort by  Michael Hade at the Illinois Labor Relations Board, ILRB, and James Bruner at the Illinois Department of Labor Advisory Board, IDOL.

(11.) Julie Pennell

1. Julie Pennell works at the office of the Illinois State Fire Marshall, ISFM, and supported a knowingly inaccurate threat assessment of plaintiff in return for financial and political benefits to herself and William Pennell.

2. ISFM, is corrupt with "ghost-payrolling" and improper influence of union officials and partisan leaders.

(12.) Paul Moriconi

1. Moriconi has a financial interest in the zoning for "bootleggers", a bar within Sangamon County, and has retained a cabaret license and other inducements in return for actions including participation in the conspiracy to commit battery to plaintiff.

2. Moriconi has also profited from decisions by the Sangamon County Board, SCB, to allow residential and commercial development by virtue of a relationship with Moughan Builders that promotes the sale of home appliances, (see also Pennell Forklift Systems, PFS)

3. Paul Moriconi derives income from real estate sales and appraisals

4. Paul Moriconi was contracted or otherwise induced to participate in the conspiracy to commit battery upon plaintiff.

5. This decision was taken with the recognition such action was in violation of law.

6. Actions taken Mr. Moriconi served to conceal the nature and extent of his involvement in the conspiracy to commit battery to plaintiff.

(13.) Randy Scott

1. In capacity as director of IDMA , facilities, IL. ANG, facilities; hires guards for bases/installations.

2. This involves, in some instances, the Service Employees International Union, SEIU, and Mr. Scott receives extra services and/or a financial kickback in return for his patronage

1. Randy Scott has misused his authority in his capacity as director of explorer/venturing for the Abraham Lincoln council of Scouts, ( Sangamon county area); This group recruits youths interested in law enforcement, firefighting etc. and mentors them in relevant occupational skills.

2. In official capacity as director of facilities for the Illinois Army national guard and the Illinois department of military affairs, misused authority regarding responsibility for Camp Lincoln in Springfield, Illinois.

4. Mr. Scott contracted with the private security firm, Securitas, for the security needs of a base in Springfield, Illinois, Camp Lincoln.

(14.) Bob Wharton

1. In capacity as Springfield High School athletic team coach, recruited students to participate in conspiracy to commit battery to plaintiff.

2. Recruitment to commit battery to plaintiff was done in coordination with assistant coach "Rico" of the Springfield Fire Department, SFD, Assistant coach Stoddard of Southeast High School, SE, others at SE, and Sacred Heart Griffin, SHG, Coach Ken Leonard.

(15.) Bob Dunbar

1. In capacity as Southern view sheriff, committed battery to plaintiff through intentionally altered automotive exhaust and other methods.

2. Recruited fellow Southern View police officers to commit battery to plaintiff.

3. Recruited neighbors in proximity to plaintiff, at 3200 S. 4th,  to commit battery to plaintiff.

(16) UFCW #881

1. Induced individuals to participate in the conspiracy to commit battery upon plaintiff.

2. This decision was taken with the recognition such action was in violation of law.

3. Actions taken by this firm served to conceal the nature and extent of their involvement in the conspiracy to commit battery to plaintiff.

(17) IAM #213

1. Induced to participate in the conspiracy to commit battery upon plaintiff.

2. This decision was taken with the recognition such action was in violation of law.

3. Actions taken by this firm served to conceal the nature and extent of their involvement in the conspiracy to commit battery to plaintiff.

(18) Illinois Trucking Association

1. Induced to participate in the conspiracy to commit battery upon plaintiff.

2. This decision was taken with the recognition such action was in violation of law.

3. Actions taken by this firm served to conceal the nature and extent of their involvement in the conspiracy to commit battery to plaintiff.

(19) Laidlaw Corporation

1. Employees induced individuals to participate in the conspiracy to commit battery upon plaintiff.

2. This decision was taken with the recognition such action was in violation of law.

3. Actions taken by this firm served to conceal the nature and extent of their involvement in the conspiracy to commit battery to plaintiff.

4. Management was and is aware of modifications made to specific buses designed to render the exhaust unnaturally harmful to plaintiff and this was facilitated by an employee at the Illinois Department of Transportation, Mr. Spivey.

(20) United Brotherhood of Carpenters, UBC

1. Local Union #16 is in Springfield, Illinois and until recently was managed by Terry Fairclough.

2. Mr Fairclough participated in the conspiracy to commit battery to plaintiff.

3. Mr. Fairclough, in his capacity as business manager at UBC 16, induced and recruited individuals employed as apprentices, journeymen or organizers in the conspiracy to commit battery to the plaintiff.

4. Mr Fairclough has recruited R.J. Finneran, specifically, among others, to participate in the conspiracy to commit battery to plaintiff.

4. Mr. Fairclough was and is aware of the long term nature of the harassment plaintiff has been subject to and has worked to conceal the scope of his involvement and the involvement of the International union.

5. Leadership at the International level was aware and induced those under their employment to participate in the conspiracy to commit battery to plaintiff.

6. In Sangamon County and in San Diego, California; (UBC 547, 1506) employees of the International, members and individuals were induced to be participants in the conspiracy to commit battery to plaintiff.

(21) Laborers International Union of North America, LIUNA 477

1. Bradley Schaive is the business manager for local #477.

2. Plaintiff has been exposed to harmful and painful chemicals on all worksites when sent by Labor Ready.

3. The Central Laborers' Fund in Jacksonville, Illinois is chaired by Ed Smith and has among the members of the boards; Greg Neff and James Bruner.

4. Greg Neff has a financial interest in the insurance firm of Hollis Neff and Bomke.

5. Larry Bomke is an Illinois State Senator, Representing the Sangamon County area.

6. Larry Bomke has a financial interest in Hollis Neff and Bomke.

7. Larry Bomke is an avid motorcycle enthusiast and has, in fact, served in a leadership role in a local motorcycle riders organization.

8. James Bruner has a financial interest in the construction firm, United Contractors Midwest, UCM; an interest he shares with William Cellini.

9. Schaive and others at LIUNA #477 and the International, have induced or otherwise recruited, current, prospective or retired laborers, and organizers to participate in the conspiracy to commit battery upon plaintiff.

10. This decision was taken with the recognition such action was in violation of law.

11. Actions taken by this union local and regional director, Ed smith, served to conceal the nature and extent of their involvement in the conspiracy to commit battery to plaintiff.

12. Mr. Schaive was involved the most recent Springfield Mayoral election campaign, where he served as the Finance chair of the Anthony Libri campaign, the Republican nominated candidate.

(22)

International Brotherhood of Teamsters, IBT # 916

1.    Tony Barr is the business manager for the IBT #916, in Springfield, Illinois.

2.    He has a personal relationship with Wes Barr of the Sangamon County Sheriff's Department and Deputy Barr was at one time president of FOP #55 in Springfield, Illinois.

3. One of the businesses that employs Teamster members in Springfield is "Bunn Capital", a wholesale food distribution business.

(23)

Phillip Morris, "Altria"

1. Altria is legally represented by Chicago law firm, Winston and Strawn, a firm that until recently, had as it's president, the former governor of Illinois, James Thompson.

2. Altria is an influential member of the Illinois and U.S. Chamber of Commerce.

3. Robert Gray is an influential member of the Chamber of Commerce and the Jaycees.

4. "Tobacco interests" were often represented by the Alexander Strategy Group.

5. R.J. Reynolds is an influential member of the US and Illinois of the Chamber of Commerce and is a major sponsor of the US and Illinois Jaycees.


 (24)

Robert K. Gray


1.  Mr. Gray is an influential member of the Sangamon County Republican Party.

2.  Mr. Gray is associated with and has a personal relationship with, Robert Kjellander and former Governor James Thompson.

3.  Mr. Gray has been, or is currently, a member of the Illinois Jaycees and/or the Illinois Chamber of Commerce.

(25)

Judith Gray

1. She is an influential member of her union at the Illinois State Board of Education.

(26)

Terry Fairclough

1. Mr. Fairclough recruited UBC #16 apprentices, members and organizers to participate in the conspiracy to commit battery upon plaintiff.

(27)

William Cellini

1. Instructed and paid, or otherwise induced, private security firms to participate in a conspiracy to commit battery upon plaintiff.

2. This was accomplished, in part, through his considerable influence over the Illinois State Police.

3. He instructed employees to accept knowingly inaccurate statements regarding the character and actions of the plaintiff and caused those statements to be gathered, recorded and acted upon as if correct.

4. He instructed and induced private security and investigative entities to unlawfully surveil and participate in the conspiracy to commit battery upon plaintiff.

5. Mr Cellini is aware of the pattern of harassment that plaintiff has been subject to and has maintained this pattern of harassment through his influence within the republican party of Sangamon county, and Illinois.

(28)

Robert Kjellander

1. Mr. Kjellander is an influential member of the Sangamon County Republican Party.

2. He is former treasurer of the Republican National Committee.

3. He has a personal relationship with, Robert Gray, William Cellini, Karl Rove and Mitt Romney.

4. He was the Midwestern Regional Campaign Coordinator for the Bush/Cheney 2004 presidential campaign; this area included the state of Illinois.

(29)

Anthony Libri

1. Mr. Libri, in his official capacity as the circuit clerk of Sangamon County, intentionally misplaced a complaint filed by plaintiff in the Fall of 2004.

2. Mr. Libri is the current chairman of the Sangamon County Republican Party.

3. He induced local military recruiters to recruit individuals in the "delayed entry program", DEP's, to participate in the conspiracy to commit battery upon plaintiff.

4. He is a member of the Roman Cultural Society of Springfield

5. He currently serves in the US military in a reserve capacity

6. He also intentionally attributed a felony charge to plaintiff by instructing an employee to fail to record the middle initial of the perpetrator in question, despite clear indications suggesting proper attribution.

(30)

Irv Smith

1. Mr. Smith is an influential member of the Sangamon County Republican Party and was former chairman.

2. His brother was chief of police for the Springfield Police Department for approximately fifteen years.

3. Mr. Smith was largely responsible for the hiring of Russell Steil as Chief of the Springfield Fire Department.

4. Mr. Smith was largely responsible for the hiring of Mr. Steil at IEMA region #6.

5. Mr. Smith was a former teacher, employed by Springfield School District #186.

6. He was elected county superintendent of schools.

7. He has personal relationships with many in the education and law enforcement communities.

8. He has a personal relationship with Robert Dunbar, a member of the law enforcement community.

9. Mr. Smith, knowingly allowed and instructed mistreatment and battery of plaintiff by law enforcement officers and officials, including Mr. Dunbar, in his capacity as sheriff of the village of Southern View.

10. Mr. Smith actively sought and maintained partisan control of the law enforcement community within Sangamon County.

(31)

Brad Schaive

1. recruited or otherwise induced apprentices, members and organizers to participate in conspiracy to commit battery upon plaintiff at worksites in Illinois and outside Illinois.

2. He did this with the knowledge of LIUNA regional director, Ed smith, for perceived political benefit and was compensated with increased status with the organization.

(32)

Tony Barr

 1. In his capacity as business manager for IBT 916, Mr. Barr is a prominent member of labor community in Springfield.

2. He has a personal relationship with Sangamon County Sheriff's Deputy Wes Barr, who was recently the president of FOP lodge #55.

3. He is aware of partisan expenditure of WIA funds at LLCC within the truck driver training program.

4. He has a personal relationship with Kent Gray, former Chairman of the Board at LLCC.

5. He has recruited or otherwise induced apprentice, member or prospective teamsters and organizers to participate in the conspiracy to commit battery upon plaintiff.

(33)

Russell Steil

1. Mr. Steil was former chief of the Springfield Fire Department.

2. He is currently regional director of IEMA for region 6 and is responsible for distributing DHS funds to small town fire departments within the region which includes sangamon county.

3. He has a personal relationship with Deputy Steil at the Sangamon County Sheriff's Department.

4. He has a strong partisan affilliation with the Republican party.

5. He also has a personal relationship with Irv Smith and Thomas Jurkanin.

 (34)

Willard Bunn III


1. Mr. Bunn is an influential member of the Sangamon County Republican Party.

2. He plays a prominent role in the local economy and the local chamber of commerce, by virtue of his manufacturing business and ties to the local banking community.

3. He also has influence within the Exelon corporation, and Ameren, specifically.

4. A cocaine distribution ring that was recently exposed in the Springfield area, noted that at least one employee, of a bank founded by Mr. Bunn, was responsible for making lending decisions, was involved that network.

5. Mr Bunn was, and is, aware and participated in the conspiracy to commit battery upon plaintiff.

6. Mr Bunn, until very recently, employed members of the IBT.

(35)

**Caldwell**

1. In capacity as DHS director for Springfield, he knowingly offered statements regarding plaintiff's threat assessment, that were known to be untrue or that a reasonable person would know to be untrue.

2. Aware of the harassment and battery of plaintiff.

3. Instructed those under his command to participate in the conspiracy to commit battery to plaintiff.

4. Instructed those responsible for battery to plaintiff to conceal the nature of their involvement and his participation.

5. Mr Caldwell is an avid motorcycle enthusiast.

6. Mr. Caldwell is aware of the illicit drug trade carried out by "outlaws" motorcycle club.

7. Mr Caldwell is a participant in the agreement to forebear investigation and prosecution of that illicit drug trade in return for various inducements offered by participants in that trade and his political patrons within the Sangamon County Republican Party.

(36)

Larry Trent

1. As a practical matter, Mr. Trent was chosen for his current job, as director of the Illinois State Police, by William Cellini

2. Mr. Trent was formerly employed by the Argosy Casino Corporation, as director of security; at that time and when Mr. Trent took his current position, the casino was partially owned by William Cellini.

3. Mr. Trent has a personal relationship with Mr. Cellini, Thomas Jurkanin and many in the law enforcement community within Sangamon County.

4. Mr. Trent has been publicly dismissive of court rulings mandating legal accountability for the Illinois State Police.

5. Mr. Trent has purposely promoted, by his official actions and statements, a culture of secrecy and intimidation regarding the exposure of corrupt officers and officials under his responsibility.

(37)

**FBI**

1. The field office in Springfield authorized national security letters, NSL's, and gag orders, based upon information offered by individuals employed by the Illinois national guard, in order to mandate compliance with the NSL's and thereby circumvent the legal framework provided by statute.

2. William Pennell and members of the Springfield area law enforcement community were responsible for this pattern of conduct and this was allowed to continue despite clear instructions that such actions were in violation of the law.

3. Officers at the Springfield field office were aware and are aware of the harassment of plaintiff and were induced to participate in the conspiracy to commit battery to plaintiff.

4. Serious questions exist regarding the work of  former Springfield agent in charge, weysan dun; it appears that prosecution and investigation under his watch may have been heavily based upon partisan affiliation.

5. Agent Dun received a significant promotion for his work in Springfield, Il.

6. Upper management of the FBI is aware of the participation of FBI employees in the conspiracy to commit battery to plaintiff and has knowingly allowed it to happen despite clear instruction that such a course of action is in violation of plaintiff's basic constitutional rights.

7. Internal regulations regarding discipline and proper safeguards for authorizing NSL's and gag orders are routinely ignored and grossly and recklessly insufficient.

8. NSL's and gag orders are required to be authorized by FBI headquarters, management level employees of the FBI were, or should have been, aware of the duration and nature of the harassment suffered by plaintiff.

(38)

Central Intelligence Agency, CIA

1. Cofer Black was employed by the agency and has a partisan affiliation.

2. Cofer Black is currently employed by the prince group.

3. The Prince Group is a group of companies that are largely dependant upon public funding and reliant upon political discretion regarding it's contracts.

4. Many senior level CIA employees have left the agency recently for employment with the Prince Group.

5. Mr. Black has endorsed the 2008 presidential campaign of Mitt Romney.

6. Psychologists employed by the agency participated in the conspiracy to commit battery to plaintiff.

7. Decisions by upper level management at the agency were improperly influenced by partisan political considerations regarding the role of the CIA in administering the training of military intelligence officers and psychologists

8. The CIA role in the reverse engineering of the SERE program involved Scott Shumate, Morgan Banks and the Spokane firm of Mitchell/Jessen

9. Employees at the CIA were instructed by management or otherwise induced to participate in the conspiracy to commit battery upon plaintiff.

(39)

DOD

1. Under the management of Vice President Dick Cheney, Secretary of Defense, Donald Rumsfeld and undersecretary of defense for intelligence, Stephen Cambone; accountability for intelligence operations within the United States, targeted at a U.S citizen, on U.S. soil, was and is grossly insufficient to preclude obvious violations of the most basic constitutional principles, like those suffered by plaintiff.

2. Psychologists employed by the US Department of Defense, "Survival, Escape, Resistance and Evasion",  or SERE program, participated in the conspiracy to commit battery to plaintiff.

3. D.O.D. employees and contractors knowingly allowed and actively pursued a course of action intended to deprive plaintiff of his constitutional rights.

4. This was done with the knowledge that plaintiff posed no threat to local or national security, his own safety, the safety of property or of others.

5. Under the current administration, the DOD has misused it's Intelligence gathering authority and used information gained for partisan political advantage.

6. The DOD has concealed the nature and extent of this misuse with the indiscriminant use of gag orders which accompany NSL's.

(40)

Department of Justice, DOJ

1. The current administration has concealed the partisan misuse of intelligence collection and analysis.

2. This administration has inappropriately shifted prosecution toward political opponents and has shifted scrutiny away from political patrons, like tobacco interests.

3. This administration has not allowed proper oversight of intelligence and the "reorganization" of intelligence within the DOJ, that took place in May of 2006, was designed and intended to quiet dissent in the department regarding the increasingly partisan decision making process.

4. As a result of the "reorganization", those within the department without strong partisan and personal affiliation to the current administration were moved out of that department.

5. The decision in May of 2006, to allow the Office of the Vice President, complete access to all current and pending case files at DOJ, raises serious questions regarding the objectivity and independence of the US DOJ.

(41)

"Outlaw's" motorcycle club, "Outlaw's MC"

1. "Outlaw's MC" is a Participant in the illicit drug trade within Springfield proper, Sangamon county and across the greater United States.

2. Involvement in Springfield cocaine traffic is done under police "protection", and among other inducements, is in return for covert operations, directed by the local law enforcement community.

3. local law enforcement agencies have taken measures to reduce accountability regarding this arrangement and have acted with the intent of concealing responsibility and participation.

(42) Charlie Pennell

1. In his capacity as police officer for Springfield Police Department, SPD, he participated in the conspiracy to commit battery upon plaintiff.

2.      In his capacity as an officer at SPD, while working in the major case unit, MCU, recruited, instructed or otherwise induced individuals to participate in the conspiracy to commit battery upon plaintiff.

(43) Jack Stoldt

1.      Mr. Stoldt is or was an active member of the community group called "crimestoppers" which is active in Sangamon and menard counties

2.      Mr. Stoldt, has been employed and resided in Spokane Washington.

3.      Mr. Stoldt owned and operated several new car dealerships within Sangamon county

(44) Central Illinois Security, CIS

1. The president of Central Illinois Security, a private security firm, CIS, is Rob Levi and the sales manager is Scott Parker.

2. Scott Parker is an avid motorcycle enthusiast and, in fact, at one time, a professional motorcycle racer.

3. Rob Levi has a personal relationship with Dick Levi, who is a founder of Levi, Ray and Shoup, an international software and training firm with headquarters in Springfield, Illinois.

4. CIS through the instructions of Mr Levi and Mr. Parker Induced individuals to participate in the conspiracy to commit battery upon plaintiff.

5. This decision was taken with the recognition such action was in violation of law.

6. Actions taken by this firm served to conceal the nature and extent of their involvement in the conspiracy to commit battery to plaintiff.


(45)

Bill Black

1.    Bill Black is currently a State Representative in Illinois and represents a district around or near Danville Illinois.

2.    Illinois Department of Corrections operates a prison at or near Danville and employees at that facility have been offered employment as a result of a demonstrated partisan affiliation with the Republican Party.

3.    Plaintiff, was charged with driving under the influence, but not convicted, in 1996, as a result of a call to "crimestoppers", a law enforcement "tip's line" operating in Sangamon and Menard counties.

4.     This call was made by a former resident of the Danville area, that was at that time, in 1996, living in Springfield.

5.     This call was made as a result of an elaborate plan to implicate plaintiff in illegal activity, and despite the fact that the caller knew plaintiff had been drinking, but that plaintiff was not in excess of the allowable level of blood alcohol content.

6.     This call received response from the Southern View Police Department.

7.     The person that made this call was induced to do so by Mr. Black, and/or his associates, with his knowledge and with the intent of exerting improper influence over the law enforcement process and harming plaintiff.

8. The "Crimestoppers" organization and the phoneline have been purposely misused by Mr. Black and individuals in the Sangamon County Republican Party to artificially raise plaintiff's threat assessment as recorded by the Threat and Local Observation Network, "TALON" system.

(46)

Allied Waste Disposal

1. Individuals at Allied Waste in the Springfield area are members of the IBT #477 and have been recruited and induced to participate in the conspiracy to commit battery upon plaintiff.

2.  This course of action was taken with the recognition such action was in violation of law.

3.  Actions taken by this firm served to conceal the nature and extent of their involvement in the conspiracy to commit battery to plaintiff.

 (47)

Sangamon County States Attorney, SCSA, John Schmidt

    1.    SCSA Schmidt was and is aware of the harassment that plaintiff has been subject to.

    2.    He is and was aware of the nature and duration of the conspiracy to commit battery to plaintiff.

    3.    Despite this knowledge, SCSA Schmidt acted with an understanding that this course of action was in violation of the law.

    4.    SCSA Schmidt acted to continue the conspiracy, despite protestation by conspiracy members and worked to conceal the extent and nature of his involvement.

(48) City of Springfield

1. Management level employees, elected and appointed officials have induced individuals to participate in the conspiracy to commit battery upon plaintiff.

2. These decisions were taken with the recognition such actions were in violation of law.

3. Actions taken by this city government served to conceal the nature and extent of their involvement in the conspiracy to commit battery to plaintiff.

4. The city has employed Jim Cimarossa as assistant Chief of Police.

5. Jim Cimarossa has a personal relationship with Pete Cimarossa and both are affiliated with the Sangamon County Republican Party.

**VII. Relief**

As a result, Plaintiff requests a jury trial where these charges may addressed and such relief as determined by that jury.

**VIII.    Jury Demand**

Plaintiff has requested a jury trial.

Dennis W. Delaney
pro-se
P.O. Box 1887
Springfield, Il. 62705